**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHICAGO STUDIO RENTAL INC., and CHICAGO STUDIO REAL ESTATE HOLDINGS, LLC<br><br>    Plaintiffs,<br><br>    v.<br><br>ILLINOIS DEPARTMENT OF COMMERCE AND ECONOMIC OPPORTUNITY, ILLINOIS FILM OFFICE, and BETSY STEINBERG, in her individual and official capacity,<br><br>    Defendants. | )<br>)<br>)<br>)<br>) No. 15 C 4099<br>)<br>) Judge Sara L. Ellis<br>)<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

Feeling shut out of the television and film production business in Chicago, Plaintiffs Chicago Studio Rental Incorporated and Chicago Studio Real Estate Holdings, LLC, collectively doing business as Chicago Studio City ("CSC"), filed suit against the Illinois Department of Commerce and Economic Opportunity ("IDCEO"), the Illinois Film Office ("IFO"), and Betsy Steinberg ("Steinberg"), the former managing director of IFO, (collectively, "Defendants"), alleging that Defendants conspired to steer film and television production work in the City of Chicago to Chicago Film Studio Holdings, LLC a/k/a Chicago Film Studios Industrial Real Estate Holdings, LLC ("Cinespace") in violation of Sections 1 and 2 of the Sherman Anti-Trust Act, 15 U.S.C. § 1 *et seq.* CSC also alleges that Steinberg, in her individual capacity, violated its equal protection and due process rights under the Fourteenth and Fifth Amendments, respectively.

The Court previously dismissed CSC's initial complaint against IDCEO and Steinberg in her official capacity on the basis of sovereign immunity, and dismissed the due process and antitrust claims against Steinberg in her individual capacity for failure to adequately plead those claims. CSC filed its amended complaint in an attempt to address those issues and added IFO as a Defendant as well. Defendants now move to dismiss the antitrust (Count II) and due process (Count III) claims of the amended complaint [41], arguing that the antitrust claims against IDCEO, IFO, and Steinberg in her official capacity are barred by sovereign immunity, and that CSC has failed to adequately allege its remaining claims against Steinberg in her individual capacity. Because IDCEO, IFO, and Steinberg in her official capacity are immune from suit under the Sherman Act, and because CSC has failed to allege an antitrust injury, the Court grants the motion to dismiss Count II. The Court grants Steinberg's motion to dismiss Count III because CSC has not alleged that Steinberg deprived it of a constitutionally protected property interest.

## BACKGROUND[1]

IDCEO is a division of the Illinois government. It is tasked with "rais[ing] Illinois' profile as a premier global business destination; and to provide a foundation for the economic prosperity of all Illinoisans, through coordination of business recruitment and retention, provision of essential capital to small businesses . . . and administration of state and federal grant programs." Doc. 38 ¶ 6. IFO is a division of IDCEO. Steinberg was the Managing Director of IFO at all times relevant to this action. IFO's principal purpose is to support film, television and commercial production activity in Illinois, particularly in Chicago (the "Chicago Film Production Market"). One method of support is to offer producers tax credits for bringing their film

---

[1] The facts in the background section are taken from CSC's Amended Complaint and are presumed true for the purpose of resolving the Rule 12(b)(6) challenges. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

production business to Illinois. Through its authority to approve these tax credits, IFO is able to exert control over Chicago-oriented producers.

Since 1979, CSC has operated film and television production studio facilities and provided equipment to producers of films, television programs, and commercials in Chicago. Until 2010, CSC successfully provided such services in Chicago and received repeat business from Hollywood studios and other Chicago-oriented producers. In 2010, however, Cinespace entered the Chicago Film Production Market as CSC's competitor. Thereafter, CSC's business declined due to Defendants' actions. Specifically, IDCEO began steering Chicago-oriented producers to Cinespace. Because these producers want to receive Illinois tax credits, IDCEO was able to use its authority in approving these tax credits to persuade producers to take their business to Cinespace.

In early 2014, Steinberg confirmed the steering of production of the NBC television series "Chicago Fire" to Cinespace when she "attributed to Governor Quinn the following direction: 'Cinespace Chicago. We need to support this as a State.'" Doc. 38 ¶ 59. Governor Quinn expressed his preference for Cinespace by holding annual press conferences regarding Chicago production revenue at Cinespace's facilities in 2011, 2013 and 2014. Governor Quinn declined repeated invitations to visit CSC's facilities. In addition, IDCEO did not show Chicago-oriented producers CSC's facilities when the producers were looking for studio space, did not afford CSC the opportunity to bid for production opportunities, did not include CSC in any meetings or events to promote production activities in Chicago, and fostered a belief among producers that in order to receive tax credits the producers had to bring their business to Cinespace. As a result of the Quinn administration's preference for and steering of production business to Cinespace, CSC lost millions of dollars in potential revenue.

Additionally, due to Cinespace's political and labor union contacts, it received millions of dollars in state grant money from Illinois under the Quinn administration. In November of 2014, Cinespace applied for and received $10,000,000 in grant funds to purchase seven properties near its facilities. Following a review by Governor Rauner's administration, however, it was discovered that Governor Quinn's administration had not abided by the normal procedures in approving the grant. Governor Rauner terminated the grant and reclaimed the $10,000,000 in grant funds. IDCEO told CSC that no funds were available when CSC sought grant assistance.

Defendants' actions of awarding grants to Cinespace and directing film producers to Cinespace resulted in Cinespace obtaining a monopoly in the Chicago Film Production Market.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and

4

a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.     **Antitrust Claim**

    A.     **Eleventh Amendment Immunity**

The Court previously dismissed CSC's claims against IDCEO and Steinberg in her official capacity on the basis of Eleventh Amendment sovereign immunity. CSC has repleaded its antitrust claim against IDCEO and Steinberg in her official capacity and added IFO as a Defendant on this claim. Defendants again move to dismiss this claim on the basis of sovereign immunity. As noted in the Court's prior Order, the Eleventh Amendment to the United States Constitution prohibits citizens from filing suit against a sovereign state. U.S. Const. amend. XI; *see Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002). Although the Eleventh Amendment does not expressly prohibit suits against a state brought by its own citizens, the Supreme Court has held that such actions are also prohibited. *Ameritech*, 297 F.3d at 585 (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)). This immunity applies not only to states, but also extends to state agencies and state officials sued in their official capacity. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907–08 (7th Cir. 1991).

The Court previously held that IDCEO is a state agency and that Steinberg is an official of that agency, therefore they are immune from suit in federal court unless an exception applies. Doc. 24 at 6–7. IFO is a component of IDCEO. CSC does not argue that there is any distinction between IFO and IDCEO that is relevant to the sovereign immunity analysis and the Court is not

aware of any distinction. Therefore IFO, as part of IDCEO, is an agency of the state of Illinois, and it enjoys the same sovereign immunity protections. *Kroll*, 934 F.2d at 907–08 (sovereign immunity applies to state agencies).

CSC argues that sovereign immunity does not bar its claims against Defendants because they were acting as non-sovereign actors when they engaged in the alleged anti-competitive conduct at issue here. Under *Parker v. Brown*, states acting in their sovereign capacity are immune from liability under the Sherman Act even if their conduct limited competition. 317 U.S. 341, 351, 63 S. Ct. 307, 87 L. Ed. 315 (1943). CSC once again asks the Court to apply the two-part test from *N.C. State Board of Dental Examiners v. Federal Trade Commission*, --- U.S. ---, 135 S. Ct. 1101, 1109, 191 L. Ed. 2d 35 (2015), to determine whether *Parker* immunity should apply in this case. The Court previously rejected the application of this test because the cases in which courts have utilized it dealt strictly with non-sovereign actors that were controlled by active market participants, and CSC had not alleged that any of the Defendants were active market participants or were controlled by active market participant. Doc. 24 at 7–8. CSC has now amended its complaint to allege that IDCEO and IFO acted as market participants, and therefore argues that the Court should apply the *N.C. State* test.

The Court finds that CSC's conclusory allegation that IDCEO and IFO were active market participants is insufficient to trigger application of the *N.C. State* test. Beyond the bare assertion that they are market participants, Defendants have nothing in common with the entity in question in *N.C. State*. In *N.C. State*, the defendant was the North Carolina State Board of Dental Examiners (the "Board"). *N.C. State*, 135 S. Ct. at 1107. The Board was comprised of dentists who were actively engaged in the practice of dentistry, which the Board was created to regulate. *Id.* In the present case there are no allegations that plausibly suggest that any

6

Defendants are participating in the Chicago Film Production Market. Defendants do not produce film or television programs, they do not employ film production staff, and they do not lease or otherwise provide production facilities or equipment. Simply put, there are no allegations, beyond CSC's say so, that Defendants are active market participants or are controlled by active market participants. Therefore, the Court declines to apply the test from *N.C. State*.

The appropriate test for whether *Parker* immunity applies here is the same one upon which the Court relied in its prior Order—the four-part test from *Czajkowski v. State of Illinois*, 460 F. Supp. 1265 (N.D. Ill. 1977). Once again, the factors of this test are: (1) whether suit is brought against a public or private entity, (2) whether the alleged conduct "flow[s] from an affirmative command of the legislature[,]" (3) whether the public entity is the state or a municipality or some other subordinate state government entity, and (4) whether the "state program is enacted for the public good rather than to further private financial objectives." *Id.* at 1279–80. CSC has not provided any additional argument as to why *Parker* immunity should not apply under the *Czajkowski* test, therefore the Court's prior analysis stands and the Defendants are entitled to *Parker* immunity. *See* Doc. 24 at 8–9.

Finally, CSC argues that Steinberg was acting outside the scope of her employment or in bad faith when she "solicit[ed] grant funds for private businesses like Cinespace," Doc. 46 at 8, and therefore is not entitled to immunity. CSC cites no legal authority for the proposition that bad faith or actions outside of her scope of employment result in a waiver of *Parker* immunity for Steinberg. CSC only cites *Hoover v. Ronwin*, 466 U.S. 558, 568, 104 S. Ct. 1989, 80 L. Ed. 2d 590 (1984), for the proposition that sovereign immunity does not attach where a non-sovereign representative of the state is acting as a commercial participant. *Hoover* has no bearing on the applicability of *Parker* immunity to the actions of state officials who may be

7

acting in bad faith or outside the scope of their employment. Because CSC has not provided the legal basis for this argument, the Court will not consider it further. *See United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

### B. Antitrust Injury

Defendants also argue that CSC's antitrust claim fails because CSC has not alleged that it suffered an antitrust injury. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides private parties with the right to pursue civil actions to enforce violations of the Sherman Act. *Sanner v. Bd. of Trade of the City of Chicago*, 62 F.3d 918, 926 (7th Cir. 1995). To have standing to bring a claim for a violation of the antitrust laws, plaintiffs must adequately plead an antitrust injury. *Id.* But not "all injuries caused by illegal antitrust activities are [] necessarily compensable injuries." *Id.* Rather, the "injur[y] must stem directly from the reason that the activity is prohibited." *Id.* In other words, an antitrust injury is only found where the injury stems from "acts that reduce output or raise prices to consumers." *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667, 670 (7th Cir. 1992).

CSC argues that to survive a motion to dismiss, it must only plead "anticompetitive conduct, monopolization, or attempted monopolization as those are types of antitrust injury." Doc. 46 at 12. CSC provides no citation to support this contention, likely because this is not the law. "[A]nticompetitive conduct, monopolization, or attempted monopolization" are examples of conduct that might violate the Sherman Act, but without some injury to consumers, in the form of increased prices or decreased output, arising from that conduct, a plaintiff lacks standing to assert an antitrust claim. *Sanner*, 62 F.3d at 926. At most, CSC has alleged that Defendants'

8

anti-competitive conduct has impeded its ability to participate in the market,[2] but that is not an allegation of harm to consumers, rather it is a harm to CSC itself and this is not sufficient. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400 (7th Cir. 2006) (allegation that defendants colluded with state employees in bid rigging scheme failed to state a claim under the Sherman Act where the bid rigging scheme only harmed plaintiff, a competing bidder, and did not harm the consumers, the State, despite the scheme being anti-competitive). Therefore, the Court grants Defendants' motion to dismiss the antitrust claim. "Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The Court has given CSC an opportunity to cure this deficiency and it failed to do so. Therefore, the Court dismisses the antitrust claim with prejudice.

## II.     Due Process Claim

Steinberg moves to dismiss CSC's due process claim arguing that CSC has not alleged that Steinberg deprived it of a constitutionally protected property interest or that Steinberg engaged in conduct that shocks the conscience. In order to adequately plead a due process claim under the Fourteenth Amendment, CSC must allege a recognized constitutionally protected property interest. *Kim Constr. Co. v. Bd. of Trs. of the Vill. of Mundelein*, 14 F.3d 1243, 1245 (7th Cir. 1994). To qualify as a constitutionally protected property interest, the right must be created by "existing rules or understanding that stem from an independent source such as state law." *Id.* at 1245–46.

---

[2] In the Amended Complaint, CSC includes a bare allegation that Defendants' actions "[i]ncreased actual and transaction costs to produce film, television and movies in Chicago to other consumers of those services in the Chicago Film Production Market." Doc. 38 ¶ 68. In addition to being conclusory, CSC does not raise this injury in its response effectively waiving it. *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 810 (7th Cir. 2001) (non-moving party's failure to raise issue in response resulted in waiver).

In the Amended Complaint CSC states that it had a protectable property interest "in the business they operate, the lawful application of the grant process and financial benefits provided by the [I]DCEO and [IFO], and [CSC's] freedom to contract under the Contract Clause of the Unite State[s] Constitution." Doc. 38 ¶ 88. However, CSC does not articulate in the amended complaint or its response the basis for finding that these alleged interests are constitutionally protected. Instead, CSC relies solely on the argument that Steinberg's conduct was arbitrary and shocks the conscience. Specifically, CSC contends that Steinberg steered business to CSC's competitors and boycotted CSC's studio. Even if these allegations were sufficient to shock the conscience, they are insufficient to support a due process claim because they do not articulate a protected property interest. *See Kim*, 14 F.3d at 1250. The rights to maintain a business and contract with customers are not protected under the Due Process Clause. *CBS Outdoor, Inc. v. Vill. of Plainfield*, 959 F. Supp. 2d 1054, 1067 n.4 (N.D. Ill. 2013). Therefore, the Court dismisses CSC's due process claim, and because the Court previously dismissed this claim on the same basis and CSC has once again failed to make an effort to remedy the issue, the Court finds that further attempts to amend would be futile. Thus, the dismissal is with prejudice. *See Bausch*, 630 F.3d at 562.

**CONCLUSION**

For the foregoing reasons the Court grants Defendants' motion to dismiss Counts II and III of the Amended Complaint [41] with prejudice. The only remaining claim is Count I against Steinberg in her individual capacity. Steinberg's answer to Count I is due April 26, 2017.

Dated: April 3, 2017

_____
SARA L. ELLIS
United States District Judge